# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GIOVANNI TEDESCO,

    Plaintiff,

v.                                                                  CIV 18-0933 KBM

ANDREW M. SAUL,[1]
Commissioner of Social
Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and/or Remand (*Doc. 18*) filed on March 10, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 9, 11, 12.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

**I.    Procedural History**

On October 10, 2014, Mr. Giovanni Tedesco (Plaintiff) filed applications with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA), and for Supplemental Security Income

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

under Title XVI of the SSA. Administrative Record.[2] (AR) at 244, 249. Plaintiff alleged a disability onset date of October 25, 2013. AR at 13, 244, 249.[3] Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially (AR at 73-74) and on reconsideration (AR at 127-128). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of his applications. AR at 148-49.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 36-72. ALJ Cole Gertner issued an unfavorable decision on November 1, 2017. AR at 10-35. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 227-28), which the Council denied on September 12, 2018 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.  Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20

---

[2] Documents 15-1 through 15-11 contain the sealed Administrative Record. *See Docs. 15-1–15-11.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

[3] The Court notes that Plaintiff's Title II application lists an onset day of October 25, 2013, and his Title XVI application lists an onset date of August 15, 2012. *See* AR at 244, 249. As Plaintiff has not alleged any error on this issue, the Court finds that it has been waived.

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[4] ALJ Gerstner found that Plaintiff "has not engaged in substantial gainful activity since October 25, 2013, the alleged onset date." AR at 16

---

[4] ALJ Gerstner first found that Plaintiff "meets the insured status requirements of the Social Security Act through March 31, 2016." AR at 16.

(citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: seizure disorder, degenerative disc disease, and degenerative joint disease of the wrists and knees." AR at 16 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ noted that Plaintiff has the following non-severe impairments: anxiety and depression. AR at 16.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 17 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the evidence of record and found that Plaintiff

> has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except for occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, pushing and pulling within those exertional limitations, standing and walking six hours in an eight hour workday, sitting for six hours in an eight hour workday, occasionally climbing ramps and stairs, never climbing ladders, ropes or scaffolds, never working around unprotected heights[] or moving mechanical parts, and never operating a motor vehicle.

AR at 24. ALJ Gerstner found that Plaintiff "is unable to perform any past relevant work." AR at 28 (citing 20 C.F.R. §§ 404.1565, 416.965). The ALJ found that Plaintiff can perform the jobs of cashier II, ticket seller, and sales attendant. ALJ at 29. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from October 25, 2013, through the date of [the ALJ's] decision." AR at 30 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the

4

factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

### IV. Discussion

Plaintiff raises four issues in his motion. He argues that the ALJ erred in: (1) holding that Plaintiff's anxiety and depression are non-severe and impose only mild limitations; (2) failing to include any mental limitations in the RFC; (3) inferring that

Plaintiff failed to follow prescribed treatment; and (3) weighing the opinion of Plaintiff's treating neurologist. *See* Doc. 28 at 14-18.

> A. **The Court finds no error in the ALJ's analysis and findings regarding Plaintiff's mental limitations.**

Plaintiff contends that the ALJ erred at Step Two in two ways: first, by finding only mild limitations in his abilities to (1) understand, remember, and apply information; (2) concentrate, persist, and maintain pace; and (3) adapt or manage himself (*see* AR at 17); and second, by basing this decision on the fact that Plaintiff did not seek mental health treatment. *See* Doc. 18 at 14-15. Plaintiff contends that the basis for the ALJ's decision was inadequate, as he sought prescriptions for his anxiety attacks and panic attack symptoms. *See id.* at 14 (asserting that Plaintiff takes Klonopin and Cymbalta for panic/anxiety symptoms).[5]

At Step Two, the ALJ found that Plaintiff's anxiety and depression were non-severe limitations, identifying a number of reasons:

> [Plaintiff] denied having anxiety and depression in February 2013. He had no depression in July 2013. He claimed having some stress caused by working. Psychiatric examinations were normal in April 2014, November 2014, March 2015, and March 2017. [Plaintiff] testified that he has never had mental health treatment. He was taking Klonopin prescribed by his primary care physician because it helped with seizures. He stated in July 2015 that it was preventing feelings of anxiety. [Plaintiff] testified that he does not know when he last had an anxiety attack, but it has probably been months. The condition has not prompted him to seek treatment, and it would seem logical that one would want to address a severe condition.

---

[5] Klonopin, or Clonazepam, "is a benzodiazepine that is used to treat panic disorder and seizures." *Doc. 18* at 16 n.12 (citing WebMD, *Klonopin Tablet, Disintegrating*, https://www.webmd.com/drugs/2/drug-920-4005/klonopin-oral/clonazepam-disintegrating-tablet-oral/details). Cymbalta, or Duloxetine, is a serotonin-norepinephrine reuptake inhibitor "used to treat depression and anxiety" and "to help relieve nerve pain (peripheral neuropathy) in people with diabetes or ongoing pain due to medical conditions such as arthritis, chronic back pain, or fibromyalgia . . . ." WebMD, *Cymbalta*, https://www.webmd.com/drugs/2/drug-91491/cymbalta-oral/details.

AR at 16 (citing AR at 413 - denying depression, anxiety at Feb. 29, 2013 appointment), 462 (denying depressing, admitting anxiety at July 24, 2013 appointment), 451 (attributing "a couple of anxiety attacks since the last office visit [on September 19, 2013] . . . to stress at work" at a Oct. 23, 2013 appointment), 438 (normal psychiatric examination at Apr. 17, 2014 appointment, Plaintiff "states that he takes the [Klonopin] about twice a week and sometimes cuts it in half and it helps his anxiety a lot"), 424 (normal psychiatric examination at Nov. 14, 2014 appointment, Plaintiff "states that overall he is doing well and does not wish to make changes"), 719-20 (normal psychiatric examination at Mar. 17, 2015 appointment, Plaintiff will '[c]ontinue Klonopin for panic attack prevention"), 852 (normal psychiatric examination at Mar. 3, 2017 appointment), 765 (Plaintiff states at July 14, 2015 appointment that Klonopin can "head off an [anxiety] attack with 1/2 pill")); *see also* AR at 58 (Plaintiff's testimony that it has been awhile, months, since his last anxiety attack and that he has not sought mental health treatment for anxiety).

Contrary to Plaintiff's assertion, it is clear that the ALJ did not base his decision *entirely* on the fact that Plaintiff has not sought mental health treatment (other than medication); that was simply one of several considerations. Plaintiff offers no real argument to establish that he has more than mild limitations, other than the fact that he consistently reported anxiety and "panic attack symptoms throughout the medical record." *Doc. 18* at 14 (citing AR at 442, 858, 860, 862). Plaintiff cites no authority for the proposition that simply having sporadic panic and anxiety attacks dictates a finding of more than mild mental limitations. Plaintiff also asserts, without citation to the record or authority, that "there is no indication that further treatment would have been

7

productive considering Plaintiff's vast medication regimen which include[s] numerous narcotics." *Doc. 18* at 14. The Court disagrees and notes that on October 6, 2016, Dr. Craig S. Naim, M.D., a physician treating Plaintiff for pain, noted that he "discussed [a] vistaril [prescription] or a psychiatry referral for [Plaintiff's] anxiety" to replace his Klonopin prescription (which Dr. Naim was tapering off), "but [Plaintiff] opted against both of these." AR at 862.

Plaintiff contends that "[t]here are no medical opinions of record that rate [his] mental impairments as mild." *Doc. 18* at 15. Yet, he points to no medical opinions of record that rate his mental impairments as something *more than* mild. *See id.* He also asserts that "[i]f anything, the record indicates a [sic] that Plaintiff's seizures vary in frequency regardless of his medication regimine [sic]." *See id.* (citing AR at 858, 860, 862, 866, 740). It is unclear how the frequency of Plaintiff's seizures bears on the severity of his mental limitations. Plaintiff has failed to show that the ALJ erred in assessing mild mental limitations.

Plaintiff next contends that ALJ Gerstner erred by failing to include any mental limitations in the RFC. *See id.* Plaintiff contends that "the existence of non-exertional impairments precludes the mechanical application of the GRIDS, [and thus] a [VE] must provide testimony to establish the existence of jobs in the national economy within [Plaintiff's] restrictions." *Id.* (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991)). As the Commissioner points out, however, the ALJ's RFC determination accounts for all of Plaintiff's work-related impairments. *Doc. 20* at 9-10. And Plaintiff fails to set forth any argument or point to any evidence of the work-related limitations his panic and anxiety attacks impose. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th

8

Cir. 2007). In *McAnally*, the Tenth Circuit found that Plaintiff had not demonstrated any error in her RFC assessment when she failed to "identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitations." *Id.* (quotation omitted). The same is true here.

Plaintiff argues that the Tenth Circuit's decision in *Farrill v. Astrue*, 486 F. App'x 711 (10th Cir. 2012), requires remand. *See* Doc. 21 at 3. In *Farrill*, the ALJ found at Step Two that the plaintiff's depression was a non-severe impairment, imposing mild limitations in certain areas. 486 F. App'x at 712. At Step Four, the ALJ determined that the plaintiff could perform light work with an additional physical restriction, but he assigned no restrictions based on her mild mental limitations. *See id.* In the narrative portion of his decision explaining the RFC, the ALJ stated that the RFC "reflects the degree of [mental] limitation the undersigned has found[,]" but he "never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations." *Id.* at 713. It thus appears that the ALJ in *Farrill* failed to adequately discuss the plaintiff's mental limitations at Step Four, relying instead on his Step Two findings. The district court in *Marin v. Colvin* relied on *Farrill* in reaching the same conclusion, because the ALJ there offered only "a single sentence" about the plaintiff's mental limitations relating to the RFC determination. *See* No. 14-CV-01331-KMT, 2015 WL 4999955, at *2-3 (D. Colo. Aug. 24, 2015).

The ALJ's decision in this case, however, is distinguishable from *Farrill* and *Marin*. Rather than relying entirely on his discussion and findings at Step Two in determining Plaintiff's RFC, ALJ Gerstner's discussion at Step Four is peppered with observations about Plaintiff's mental impairments. *See* AR at 24-28. He discussed

9

Plaintiff's activities of daily living (i.e., he lives alone in an apartment, uses a computer, manages his finances, takes care of his personal needs/medications without reminders, prepares meals, cares for his cat, cleans and shops, spends time and gets along with others, finishes what he starts, and handles stress "decent[ly]"). *See* AR at 25-26. The ALJ summarized record evidence regarding Plaintiff's anxiety and depression. AR at 26 (Plaintiff "wondered if he might have anxiety or depression" (citing AR at 372)), 26 (Plaintiff denied having anxiety or depression (citing AR at 413, 462)), 26 (Plaintiff had anxiety due to stress at work (citing AR at 451)), 27 (normal psychiatric examinations (citing AR at 438, 424, 719, 854)), 27 (anxiety was under control with Klonopin (citing AR at 765)). He noted that Plaintiff did not say he could not work due to his mental impairments, but rather cited neurological issues. *See* AR at 25 (noting the it was Plaintiff who "stated that the primary reason he was unable to work was because he has grand mal seizures") (discussing AR at 48), 27 (noting that Plaintiff stopped working in October 2013 "because the plant closed down and not because he was disabled") (discussing AR at 72)). And he found it important that Plaintiff testified that "it had been a long time since he had an anxiety attack" and "had never received mental health treatment." AR at 28; *see also* AR at 58.

Because the ALJ took time to examine Plaintiff's mental limitations in depth at Step Four, the Court finds this case is more in line with *Suttles v. Colvin*, 543 F. App'x 824 (10th Cir. 2013). There, the Tenth Circuit observed that after finding the plaintiff had non-severe depression with resulting mild limitations at Step Two, the ALJ went on to "discuss[] evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment [in] the RFC . . . ." *Id.* at 826. The Tenth Circuit

did not reverse for a failure to explicitly explain why the RFC did not contain mental limitations, because it was clear "that the ALJ conducted a mental RFC assessment separate from the non-severity determination made at step two." *Id.* Similarly, here, the ALJ adequately discussed Plaintiff's mental limitations at Step Four, and the Court finds that "[t]he ALJ was under no obligation to include the mild limitations in" either understanding, remembering, and applying information or concentration, persistence and pace in Plaintiff's "RFC based solely on his finding that [he] had [mild limitations] in [these areas] as part of the distinct step-three analysis." *Beasley v. Colvin*, 520 F. App'x. 748, 754 (10th Cir. 2013).

Finally, Plaintiff does not argue that the ALJ erred in relying on the state agency physicians, who opined that Plaintiff could perform light work with seizure precautions and did not assign any specific mental limitations. *See* AR at 83-85, 109-11. In light of the foregoing, the Court denies Plaintiff's motion on this issue.

### B. Plaintiff has failed to establish reversible error regarding a failure to follow prescribed treatment.

Plaintiff contends that the ALJ erroneously found that "Plaintiff refused to take his seizure medication due to side effects." *Doc. 18* at 16. The Court disagrees. The record supports ALJ Gerstner's finding that Plaintiff was not always compliant with his prescribed medications. The ALJ noted that Plaintiff took several seizure medications but stopped without the advice of his physician. *See* AR at 21 & 27 (citing AR at 677 (Dec. 4, 2014 note that Plaintiff "continues on lamotrigine" but went without it "for a period of time" and "[i]nterestingly, he didn't have seizures while he was off of" it)), 22 & 27 (citing AR at 730 (May 4, 2015 note that Plaintiff's "last seizure was over 6 months

11

ago" and "[h]e is not currently on seizure medication")), 23 & 27 (citing AR at 740 (May 13, 2016 note that Plaintiff "did not like the way he felt on [seizure] medication and so he discontinued it on his own")), 26 ("he did not like to take seizure medication, which proved to be a recurring assertion through the date of the hearing"), 27 (Plaintiff "admitted to going for long periods of time without seizure medication. Most of the time since his alleged onset, he had **not** been taking seizure medication.") (discussing testimony, AR at 49).

Plaintiff argues that he regularly took Klonopin, which is also prescribed to treat seizures and was "best at controlling his seizures." *Doc. 18* at 16. While this may be true, it does not refute the fact that he did not take the other seizure medications as prescribed. He also complains, without reference to the record, that the ALJ failed to recognize that "Plaintiff was generally compliant with treatment and fundamentally tried everything he could to find a seizure medication that worked without causing severe side effects." *Id.* at 17. Again, while this may be true, it does not detract from the ALJ's finding that Plaintiff did not comply with all of his prescribed medications. The Court will deny Plaintiff's motion on this issue.

### C. The ALJ adequately weighed Dr. Shibuya's opinion.

Finally, Plaintiff argues that the ALJ erred in discounting Dr. Daniel Shibuya, M.D.'s opinion. *See id.* at 17-18. Dr. Shibuya is a neurologist who has treated Plaintiff since 2012. *See*, *e.g.*, *id.* at 3; AR at 367. Dr. Shibuya submitted a Treating Physician's Report for Seizure Disorder, dated December 4, 2014. AR at 317-18. In the report, Dr. Shibuya noted that Plaintiff has generalized tonic-clonic seizures and complex partial seizures at a frequency that varies. AR at 317. Dr. Shibuya stated that prior to

December 4, 2014, Plaintiff had experienced five seizures over the past four months. AR at 317. He also noted that Plaintiff's medication was adjusted in December, and he had not had any seizures since the adjustment. AR at 317.

The ALJ gave "some weight" to Dr. Shibuya's report but chose not to give greater weight because Dr. Shibuya did not provide a specific RFC. *See* AR at 28. ALJ Gerstner also stated that Dr. Shibuya's "report on the frequency of occurrence was vague and uncertain and fail[ed] to address adherence to medications." AR at 28. Plaintiff contends that it was error for the ALJ to discount Dr. Shibuya's report on the basis that the frequency was vague and because he failed to opine on Plaintiff's adherence to medications, particularly because the form did not "include any questions about medication compliance." *Doc. 18* at 17-18. Plaintiff cites *White v. Massanari* for the proposition that "the Commissioner must recontact a treating physician when the doctor provides information that is 'inadequate' to determine whether the claimant is disabled." *Id.* at 18 (citing 271 F.3d 1256, 1260 (10th Cir. 2001)). But Plaintiff misapplies *White*. As the Tenth Circuit stated in that case, "[i]t is the inadequacy of the *record*, rather than the rejection of the treating physician's *opinion*, that triggers the duty to recontact that physician." 271 F.3d at 1261 (citing 20 C.F.R. §416.912(e) (emphasis added)). Plaintiff has not shown, nor does the Court find, that the record was inadequate for the ALJ to make a determination on whether Plaintiff was disabled.

Moreover, as the Commissioner states, "Dr. Shibuya . . . did not opine that Plaintiff had any limitations that conflict with the RFC assessment." *Doc. 20* at 10 (citing *Ray v. Bowen*, 865 F.2d 222, 226 (10th Cir. 1989)). As Dr. Shibuya "did not opine that Plaintiff had any other functional limitations, nor did he report any persistent symptoms

13

or objective findings that would support the inclusion of additional limitations in the RFC[,]" *see id.*, Plaintiff has failed to demonstrate any reversible error. *See*, *e.g.*, *Weaver v. Astrue*, 353 F. App'x 151, 155 (10th Cir. 2009) (upholding ALJ's RFC determination where treating physician "did not indicate any functional limitations"). Ultimately, the Court finds the ALJ's RFC determination is supported by supported evidence and will deny Plaintiff's motion.

## V. Conclusion

Plaintiff has failed to show that the ALJ erred in making determinations regarding his mental impairments, in analyzing the record of Plaintiff's compliance with his medications, and in analyzing Dr. Shibuya's opinion.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and/or Remand (*Doc. 18*) is **DENIED**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent